Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
Meghan E. George (SBN 274525)
Thomas E. Wheeler (SBN 308789)
LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21550 Oxnard St. Suite 780,
Woodland Hills, CA 91367
Phone: 877-206-4741
Fax: 866-633-0228
tfriedman@toddflaw.com
abacon@toddflaw.com
mgeorge@toddflaw.com
twheeler@toddflaw.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHRISTOPHER FISCHER, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>BLUEGREEN CORPORATION<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF**<br><br>1. **CALIFORNIA BUSINESS AND PROFESSIONS CODE §§ 17500, *ET SEQ*,**<br>2. **CALIFORNIA BUSINESS AND PROFESSIONS CODE §§ 17200, *ET SEQ*.**<br><br>**JURY TRIAL DEMANDED** |

**INTRODUCTION**

1. CHRISTOPHER FISCHER ("Plaintiff"), by Plaintiff's attorneys, brings this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, to challenge the illegal actions BLUEGREEN CORPORATION ("Defendant") with regard to Defendant's misleading business practices, including the practice of making and advertising false

promises and statements with regards to its timeshare contracts that it had no intention of honoring, that caused Plaintiff and other consumers damages.

2. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, or to a Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

3. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

4. Unless otherwise stated, Plaintiff alleges that any violations by Defendant were knowing and intentional, and that Defendant did not maintain procedures reasonably adapted to avoid any such violations.

5. Unless otherwise indicated, the use of any Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of that Defendant named.

## JURISDICTION AND VENUE

6. Jurisdiction is proper under 28 U.S.C. § 1332(d)(2) because Plaintiff, residents of the State of California, seeks relief on behalf of a Nationwide class, which will result in at least one class member belonging to a different state than that of Defendant, a company whose principal place of business is in the State of Florida and is incorporated in the State of Florida. In addition, the matter in controversy exceeds $5,000,000 exclusive of interest of costs. Therefore, both diversity jurisdiction and the damages threshold under the Class Action Fairness Act of 2005 ("CAFA") are present, and this Court has jurisdiction.

7. Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391(c) because Defendant is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced; Defendant's contacts with this District are sufficient to subject it to personal jurisdiction; and, a substantial part of the

events giving rise to the claims occurred in this District.

## PARTIES

8. Plaintiff is an individual who resides in the State of California and is a "person" and "consumer" as defined by Cal. Bus. & Prof. Code § 17201.

9. Plaintiff is informed and believes, and thereon allege, that Defendant is a company whose State of Incorporation is in Florida and whose principal place of business is in the State of Florida.

10. Plaintiff is informed and believes, and thereon alleges, that Defendant is a worldwide company that promotes and sells timeshare contracts.

## FACTUAL ALLEGATIONS

11. At all times relevant, Plaintiff is an individual residing within the State of California, County of Los Angeles.

12. Defendant is a leader in the vacation ownership industry, and sells timeshare contracts to consumers.

13. On or around February 18, 2014, Plaintiff attended what they were told was to be an "Owner's Update" meeting in Las Vegas, Nevada. However, this "Owner's Update" was actually a sales presentation by Defendant.

14. During this presentation, Defendant's agents, going by the names "Vertis" and "Temaca," represented to Plaintiff and all other consumers present the following:
    a. The timeshare offered by Defendant was an investment opportunity;
    b. It was tax deductible;
    c. It may be sold at a profit;
    d. Defendant would buy back the timeshare in case Plaintiff is unhappy with it; and
    e. Sales agents present at the time would be Plaintiff' personal representatives who would help Plaintiff rent the timeshare.

15. The meeting included other high intensity sales tactics to induce Plaintiff to

enter into a timeshare contract, including misrepresenting length of time of the presentation. That is, Defendant, directly or through its agents, pressured Plaintiff into remaining at the "Owners Update" from around 9:00 AM until around 4:00 PM.

16. Defendant failed to inform Plaintiff of their right to cancel.

17. The terms contained within the timeshare contract are completely different from the terms offered and promised during the timeshare presentation.

18. Defendant pressured Plaintiff into paying an initial purchase price of about $18,300 with monthly fees of about $2,500.

19. Defendant misled Plaintiff as to how much time they have on their timeshare and when they can use that time.

20. Shortly after the purchase, Plaintiff attempted to sell the timeshare back to Defendant, pursuant to Defendant's representations, because Plaintiff was not happy with the purchase.

21. Plaintiff relied on the aforementioned representations.

22. Furthermore, Defendant represented to Plaintiff that the timeshare would be usable at certain times of the year when it fact, the timeshare was neither available when Defendant said it would be available, nor was it available for the length of time Defendant said it would be available.

23. Because of Defendant's misrepresentations of the nature of the interaction, Plaintiff lost over $20,000 by giving up valuable consideration in exchange for a timeshare that is effectively unusable.

24. Shortly after being pressured into the deal, Plaintiff expressed to Defendant a desire to cancel the contract before incurring further damages, at which time Defendant, directly or through its agents, told Plaintiff that they would not cancel the contract and continued to bill Plaintiff about $2,500 every month.

25. Plaintiff, in an effort to avoid incurring further damages, ceased paying the monthly fees.

26. However, Defendant continued to bill Plaintiff.
27. Furthermore, Defendant continued to attempt to collect fees from Plaintiff by sending the bills to a third party collection agency.
28. The outstanding bills were reported on Plaintiff's consumer credit report, and as a result, Plaintiff's credit rating and ability to obtain credit has suffered.
29. Plaintiff alleges, on information and belief, that Defendant's representations and advertisements during its timeshare presentations were propagated, controlled, and/or profited from by Defendant, and that Defendant was materially involved in their dissemination to the public.
30. Plaintiff alleges, on information and belief, that it is Defendant's common practice to make these false representations and advertisements to consumers as part of Defendant's "hard sell" tactics to convince consumers to enter into timeshare contracts.
31. Plaintiff alleges, on information and belief, that Defendant's false advertising causes significant and continuing harm to consumers who are pressured into giving up their current investments in exchange for inferior ones.

## CLASS ALLEGATIONS

32. Plaintiff brings this action on behalf of themselves, and on behalf of all others similarly situated ("The Class").
33. Plaintiff represent, and are members of the following Class, defined as follows:

> All consumers who entered into a timeshare contract with Defendant after Defendant represented to the consumers that Defendant would buy back the timeshare and/or made further misrepresentations as to the nature of its timeshares.
> .

34. Plaintiff does not know the exact number of persons in the Class, but believes them to be in the hundreds, if not thousands, making joinder of all these actions impracticable.

35. The identity of the individual members is ascertainable through Defendant's and/or Defendant's agents' records or by public notice.

36. There is a well-defined community of interest in the questions of law and fact involved affecting the members of The Class. The questions of law and fact common to the Class predominates over questions affecting only individual class members, and include, but are not limited to, the following:

    a. Whether Defendant's practices are "unfair" as defined by California Business and Professions Code § 17200;
    b. Whether Defendant's practices are "illegal" as defined by California Business and Professions Code § 17200;
    c. Whether Defendant's practices are "fraudulent" as defined by California Business and Professions Code § 17200;
    d. Whether such practices violate California Business and Professions Code § 17200;
    e. Whether Defendant violated California Bus. & Prof. Code § 17500, et seq.
    f. Whether Plaintiff and the Class are entitled to restitution under Cal. Bus. & Prof. Code §§ 17200-17203;
    g. Whether Plaintiff and Class members are entitled to declaratory relief, injunctive relief and/or restitution under Cal. Bus. & Prof. Code § 17535, and,
    h. The proper formula(s) for calculating and/or restitution owed to Class members.
    i. Whether members of the Class are entitled to statutory damages;
    j. Whether members of the Class are entitled to declaratory relief; and,
    k. Whether members of the Class are entitled to injunctive relief.

37. Plaintiff will fairly and adequately protect the interests of the Class.

38. Plaintiff has retained counsel experienced in consumer class action litigation

and in handling claims involving unlawful debt collection practices.

39. Plaintiff's claims are typical of the claims of the Class which all arise from the same operative facts involving Defendant's practices.

40. A class action is a superior method for the fair and efficient adjudication of this controversy.

41. Class-wide damages are essential to induce Defendant to comply with the federal and State laws alleged in the Complaint.

42. The Class members are unlikely to prosecute such claims on an individual basis since the individual damages are small. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

43. Plaintiff and the Class seek injunctive relief against Defendant to prevent Defendant from inducing consumers to enter into timeshare contracts with terms it has no intention of honoring.

44. Defendant has acted on grounds generally applicable to the Class thereby making appropriate final declaratory relief with respect to the class as a whole.

45. Members of The Class are likely to unaware of their rights.

46. Plaintiff contemplates providing notice to the putative class members by direct mail in the form of a postcard and via publication.

47. Plaintiff requests certification of a hybrid class combining the elements of Fed. R. Civ. P. 23(b)(3) for monetary damages and Fed. R. Civ. P. 23(b)(2) for equitable relief.

FIRST CAUSE OF ACTION

**VIOLATION OF THE CALIFORNIA FALSE ADVERTISING ACT**

(Cal. Bus. & Prof. Code §§ 17500 et seq.)

On Behalf of the Class

48. Plaintiff incorporates by reference each allegation set forth above.

49. Pursuant to California Business and Professions Code section 17500, et seq., it

is unlawful to engage in advertising "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

50. Defendant misled consumers by making misrepresentations and untrue statements about Defendant's intent to buy back the timeshare in case Plaintiff or any Class Member is unhappy with the timeshare and the nature of "Owners Updates" events. Defendant failed to disclose to consumers, at the time of the signing of the timeshare contracts, that Defendant would make no effort to buy back the timeshares. Defendant knew that its representations and omissions were untrue and misleading, and deliberately made the aforementioned representations and omissions in order to deceive reasonable consumers like Plaintiff and other Class Members into entering contracts that they would not have assented to but for Defendant's nefariousness.

51. As a direct and proximate result of Defendant's misleading and false advertising, Plaintiff and the other Class Members have suffered injury in fact and have lost money or property. Plaintiff reasonably relied upon Defendant's representations regarding the nature of the "Owners Update" and Defendant's intent to buy back timeshares. In reasonable reliance on Defendant's misrepresentations, Plaintiff and Class Members attended what they thought were mere "Owners Updates" when they were in fact sales presentations where they were pressured into making purchases. In turn, Plaintiff and Class Members entered contracts for timeshares when they had no desire to make such purchases. Furthermore, after reasonably relying on Defendant's advertisements and misrepresentations with respect to Defendant's intent to buy back timeshares, Plaintiff and Class Members entered into contracts for timeshares that they would not have entered into otherwise. Thus, Plaintiff and Class Members suffered injury in fact.

52. The misleading and false advertising described herein presents a continuing

threat to Plaintiff and the Class Members in that Defendant persists and continues to engage in these practices, and will not cease doing so unless and until forced to do so by this Court. Defendant's conduct will continue to cause irreparable injury to consumers unless enjoined or restrained. Plaintiff are entitled to preliminary and permanent injunctive relief ordering Defendant to cease their false advertising, as well as disgorgement and restitution to Plaintiff and all Class Members of Defendant's revenues associated with their false advertising, or such portion of those revenues as the Court may find equitable.

## SECOND CAUSE OF ACTION

### VIOLATION OF BUSINESS AND PROFESSIONS CODE § 17200

### On Behalf of the Class

53. Plaintiff incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

54. Actions for relief under the unfair competition law may be based on any business act or practice that is within the broad definition of the UCL. Such violations of the UCL occur as a result of unlawful, unfair, or fraudulent business acts and practices. A plaintiff is required to provide evidence of a causal connection between a defendant's business practices and the alleged harm--that is, evidence that the defendant's conduct caused or was likely to cause substantial injury. It is insufficient for a plaintiff to show merely that the defendant's conduct created a risk of harm. Furthermore, the "act or practice" aspect of the statutory definition of unfair competition covers any single act of misconduct, as well as ongoing misconduct.

### UNFAIR

55. California Business & Professions Code § 17200 prohibits any "unfair ... business act or practice." Defendant's acts, omissions, misrepresentations, and practices as alleged herein also constitute "unfair" business acts and practices within the meaning of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and

unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.  There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.  Plaintiff reserve the right to allege further conduct which constitutes other unfair business acts or practices.  Such conduct is ongoing and continues to this date.

56. In order to satisfy the "unfair" prong of the UCL, a consumer must show that the injury: (1) is substantial; (2) is not outweighed by any countervailing benefits to consumers or competition; and, (3) is not one that consumers themselves could reasonably have avoided.

57. Defendant's conduct has caused and continues to cause substantial injury to Plaintiff and members of the Class. Plaintiff and Class Members have suffered injury in fact due to Defendant's unilateral decision to not buy back timeshares pursuant to their promise to do so in case Plaintiff or any Class Member is unhappy with the timeshare. Plaintiff and Class Members have further suffered injury by being lured into sales presentations, thereby being deceived. Plaintiff and Class Members gave up valuable consideration in reliance on the misrepresentations described herein. Thus, Defendant's conduct has caused substantial injury to Plaintiff and Class Members.

58. Moreover, Defendant's conduct as alleged herein solely benefits Defendant while providing no benefit of any kind to any consumer.  Many of the consumers deceived by Defendant already owned timeshares or did not own any at all and were without desire to change, and the deceptive sales tactics used by Defendants tricked consumers into attending high-pressure sales environments where consumers would be pressured into giving up their current timeshares in exchange for more expensive ones or pressured into entering new agreements causing them to take on substantial debt without any return benefit. Thus, the injury suffered by Plaintiff and Class Members is not outweighed by any countervailing benefits to consumers.

59. The injury suffered by Plaintiff and Class Members is not an injury that these consumers could reasonably have avoided. Plaintiff and Class Members could not have known that they were attending sales presentations, nor could they have known that Defendant would lie about its intent to buy back timeshares. As such, Defendant took advantage of Defendant's position of perceived power in order to deceive Plaintiff and the Class members to enter into long term binding timeshare contracts. Therefore, the injury suffered by Plaintiff and members of the Class is not an injury which these consumers could reasonably have avoided.

60. Defendant failed to disclose to Plaintiff or other consumers that Defendant would not buy back timeshares, nor did Defendants disclose the true nature of "Owner Updates".

61. Thus, Defendant's conduct has violated the "unfair" prong of California Business & Professions Code § 17200.

### FRAUDULENT

62. California Business & Professions Code § 17200 prohibits any "fraudulent ... business act or practice." In order to prevail under the "fraudulent" prong of the UCL, a consumer must allege that the fraudulent business practice was likely to deceive members of the public.

63. The test for "fraud" as contemplated by California Business and Professions Code § 17200 is whether the public is likely to be deceived. Unlike common law fraud, a § 17200 violation can be established even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage.

64. Here, not only were Plaintiff and Class Members likely to be deceived, but these consumers were actually deceived by Defendant. Deception is evinced by the fact that Plaintiff and Class Members were already timeshare owners and displayed no interest in attending sales presentations or gave Defendant no reason to believe they were interested in sales pitches for costly timeshares. Furthermore, Plaintiff and Class Members reasonably believed Defendant

would buy back their timeshares because that is exactly what Defendant represented to them.

65. Plaintiff's reliance upon Defendant's deceptive statements is reasonable due to the unequal bargaining powers of Defendant and Plaintiff. For the same reason, it is likely that Defendant's fraudulent business practice would deceive other members of the public.

66. Thus, Defendant's conduct has violated the "fraudulent" prong of California Business & Professions Code § 17200.

67. Defendant used false advertising, marketing, and misrepresentations, and otherwise unlawfully induce Plaintiff and Class Members to enter into timeshare contracts. Had Defendant not falsely advertised, marketed or misrepresented its timeshare contracts, Plaintiff and Class Members would not have purchased the Class Products, or would have purchased an alternative and appropriate product that did not deceive Plaintiff or Class Members. Defendant's conduct therefore caused and continues to cause economic harm to Plaintiff and Class Members.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff and The Class Members pray for judgment as follows:

- Certifying the Class as requested herein;
- Restitution of the funds improperly obtained by Defendant;
- Any and all statutory enhanced damages;
- All reasonable and necessary attorneys' fees and costs provided by statute, common law or the Court's inherent power;
- For equitable and injunctive and pursuant to the California Business and Professions Code § 17203; and,
- Any and all other relief that this Court deems just and proper.

### TRIAL BY JURY

Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff and The Class are entitled to, and demand, a trial by jury.

Dated: January 18, 2017

**Law Offices of Todd M. Friedman**

By: /s/ Todd M. Friedman
**Todd M. Friedman, Esq.**
Attorneys for Plaintiff